NOT FOR PUBLICATION                                          [Dkt. Ent. 25]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| Chris Jones, | |
| Plaintiff, | Civil Action No. 07-5065 (RMB/JS) |
| v. | |
| Burlington Country Board of Chosen Freeholders, et al., | **MEMORANDUM AND ORDER** |
| Defendants. | |

Appearances:

Chris Jones, Pro se plaintiff

J. Brooks DiDonato, Esquire
Parker McCay
Route 73 & Greentree Road, Suite 401
Marlton, NJ 08053

    Attorney for Defendants

**BUMB**, UNITED STATES DISTRICT JUDGE:

    This matter comes before the Court upon a motion by defendants the Burlington County Board of Chose Freeholders and Juel Cole, warden of the Burlington County Detention Center ("BCDC"), (collectively, the "Defendants") for summary judgment, pursuant to Federal Rule of Civil Procedure 56(a).  Plaintiff Chris Jones (the "Plaintiff"), who was a BCDC pretrial detainee, alleges by this action that prison officials exposed him to a

1

dangerous inmate, failed to protect him from assault by that inmate, failed to provide him with adequate medical care following the assault, and housed him in an overcrowded facility, all in violation of his constitutional rights.  Plaintiff has filed no opposition to the summary judgment motion, however.[1]  Thus, for the following reasons, the Court will grant the motion.[2]

## BACKGROUND

Plaintiff's allegations, quoted in full from his Complaint, are as follows:

> On January 1, 2007, at or around 8:00 a.m., I was assaulted by a state inmate, Uriah Hill, while en route to the chow-hall for breakfast.  Subsequently, I[,] along with Uriah Hill, was taken to medical and then to lock up.  The assigned tier officer[,] Burns[,] was a witness to the assault and observed all the bloodshed on the

---

[1] Plaintiff has not filed any opposition to the summary judgment motion; therefore the Court treats the motion as unopposed. Green v. Essex County Superior Court Clerk, No. 02-1872, 2006 U.S. Dist. LEXIS 22151, *2 n.1 (D.N.J. Apr. 6, 2006). As this is a motion for summary judgment, the Court will nonetheless consider the merits. Virgin Records America, Inc. v. Trinidad, No. 06-5914, 2007 U.S. Dist. LEXIS 88386, *7 (D.N.J. Dec. 3, 2007) (citing Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991)). However, since Plaintiff has failed to respond to the motion, the Court must take as true all well founded averments of fact made by Defendant. Fed. R. Civ. P. 56(e)(2); see also Herman v. City of Chi., 870 F.2d 400, 404 (7th Cir. 1989) ("A district court need not scour the record to make the case of a party who does nothing.").

[2] The other defendants named in the Complaint, Dr. Evans and the Commissioner of the Department of Corrections, have not appeared in this litigation.  The Court presumes that this is attributable to Plaintiff's failure to effect proper service on them.

>  tier, which came from a cut on my left eye. At courtline,[3] Officer Burns' statement along with Uriah Hill's confession led to him being found guilty and to me being found not guilty as I was unable to defend myself. After being released from lock up I began to fill out request slips to see the nurse or doctor due to excruciating pain I was [in] and still experience on the left side of my face and head aches. After I received no response, I began to ask the following Sgt.'s [sic] for a grievance form: Sgt. McRay, Leif, and Blango, to no avail. I found a grievance form in the law library and filed it with the administration on Feb. 26, 2007, which went unanswered. The defendant violated my rights as follows: (1) "Freeholders" and "Warden" failed to secure my safety while I was incarcerated in their care and custody. The "Warden" also took no action to alleviate overcrowded conditions here at the B.C.D.C. Also, the "Warden" failed to properly classify Uriah Hill, a state prison inmate from me, a pretrial detainee. (2) The Commission of the Dep[artmen]t of Corr[ections] housed Uriah Hill here at the B.C.D.C. for an impending trial which he was already sentenced and housed at Eastern State Prison (Rahway State Prison). (3) The Doctor of the B.C.D.C. "Dr. Evans" for failing to provide adequate medical attention to the injuries I sustained when assaulted. All defendants violated my Fourteenth Amendment rights to the United States of American Constitution.

(Compl. 7.)

Defendants have established, and Plaintiff has not disputed, the following material facts. Plaintiff was admitted to BCDC as a pretial detainee on November 15, 2006. While awaiting trial, on January 1, 2007, at approximately 8:10 a.m., a fight between Plaintiff and inmate Uriah Hill occurred, while officers were responding to another, unrelated altercation. Plaintiff

---

[3] "Courtline" is an adjudicative body within the prison system. Tyson v. N.J. Dept. of Corr., 2006 WL 2986627, *1 (N.J. Super. Oct. 20, 2006).

characterizes the incident as an unprovoked and unexpected assault by Mr. Hill; accordingly, he had not advised prison officials that he feared that such an assault might be forthcoming.  Plaintiff and Mr. Hill were both charged with fighting in violation of prison regulations, but Plaintiff was ultimately found not guilty of that charge.  Immediately after the fight, Plaintiff was transported to the prison's Medical Center for examination by Nurse Roxanne Harris, who treated and released him.  Plaintiff was examined and treated again on January 2, 3, 10, and February 28, 2007.[4]  On March 30, 2007, Plaintiff was readmitted and treated for head injuries incurred during another altercation.  On August 1, 2007, he refused to attend an examination by a neurologist.

Plaintiff initiated this suit with the filing of a Complaint on October 24, 2007.  The Court administratively terminated the action on February 4, 2008 for Plaintiff's failure to provide an updated mailing address as required by Local Civil Rule 10.1.  Nearly two years later, on November 24, 2009, the Court reopened the case at Plaintiff's request.  Shortly thereafter, on December 22, 2009, Plaintiff moved for appointment of pro bono counsel, which United States Magistrate Judge Schneider denied on February 19, 2010.  Plaintiff was deposed on April 26, 2010, pursuant to

---

[4] Plaintiff was also provided Tylenol on January 25, 2007, in response to his complaints of a headache.

Judge Schneider's Order.  Defendants then filed this motion for summary judgment on May 12, 2010.

## LEGAL STANDARD

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The movant bears the initial burden to demonstrate the absence of facts supporting the nonmovant's claim.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986).  The burden then shifts to the nonmovant to prove that there is a genuine issue of material fact.  If the nonmovant fails to respond to the motion, "summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2).  The Court construes a nonmovant's failure to respond as "effecting a waiver of [his] right to controvert the facts asserted by the mov[ant]," and therefore "will accept as true all material facts set forth by the mov[ant] with appropriate record support."  Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990) (quoting Jaroma v. Massey, 873 F.2d 17, 21 (1st Cir. 1989)); see also Carp v. IRS, No. 00-5992, 2002 U.S. Dist. LEXIS 2921, *6-7 (D.N.J. Jan. 28, 2002).

## DISCUSSION

The Court liberally construes pro se pleadings to apply all relevant law.  Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir.

2003) (citing Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002)). Here, the Court construes Plaintiff's Complaint as alleging a failure by prison officials to protect him from assault by a fellow inmate, a failure to adequately treat his injuries following the assault, and housing him in an overcrowded facility, all in violation of his constitutional rights. The Court addresses each allegation in turn.

First, can Plaintiff establish that prison officials failed to protect him in violation of the Eighth Amendment? It is well established that "mere negligent conduct cannot give rise to a § 1983 claim." Anderson v. Harron, No. 08-0185, 2009 WL 2058863, *2 (D.N.J. July 7, 2009) (citing Davidson v. O'Lone, 752 F.2d 817, 829 (3d Cir. 1984)). For claims based on failure to prevent harm, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and that those conditions resulted from "deliberate indifference" to inmate health or safety.[5] Farmer v. Brennan, 511 U.S. 825, 834 (1994). Here, Plaintiff has made no showing of deliberate indifference by Defendants. No record evidence indicates that prison or county officials were aware of a risk to Plaintiff, nor that the circumstances in which Plaintiff found himself were

---

[5] The Third Circuit has applied Eighth Amendment doctrine to pretrial detainees raising claims of failure to protect and inadequate medical care. See Hubbard v. Taylor, 399 F.3d 150, 166 n.22 and accompanying text (3d Cir. 2005).

uniquely dangerous such that officials were on notice of a risk to Plaintiff.  Accordingly, Plaintiff's allegation that prison officials failed to protect him in violation of the Eighth Amendment cannot survive summary judgment.

Second, can Plaintiff establish that Defendants violated his Eighth Amendment rights by failing to adequately treat his post-assault injuries?  This allegation fails for substantially the same reason.  To establish a violation of the right to adequate medical care an inmate must show a "serious medical need" and behavior on the part of prison officials that constitutes "deliberate indifference" to that need. Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).  Plaintiff has made no such showing here.  To the contrary, Plaintiff's own deposition testimony reveals that he was treated, repeatedly, by medical personnel at the prison.  Compare Gallo v. Wash. County, 363 F. App'x 171, 173 (3d Cir. 2010) (affirming summary judgment for prison defendants based on evidence that prison medical staff "actively engaged in efforts to alleviate [the plaintiff's] pain, and to diagnose and to treat his condition").  Since no record evidence suggests deliberate indifference to a serious medical need, Plaintiff's allegation cannot survive summary judgment.

Third, can Plaintiff establish that Defendants violated his

7

Due Process rights by housing him in an overcrowded facility? Because the events underlying Plaintiff's Complaint occurred while he was awaiting trial, the Fourteenth Amendment's Due Process Clause is the applicable constitutional provision.[6] Hubbard v. Taylor, 538 F.3d 229, 230 (3d Cir. 2008). To determine whether conditions of confinement violate a pretrial detainee's Due Process rights, courts "ask, first, whether any legitimate purposes are served by the[] conditions, and second, whether the[] conditions are rationally related to these purposes." Id. at 232 (citing Union County Jail Inmates v. Di Buono, 713 F.2d 984, 992 (3d Cir. 1983)). Here, Plaintiff has offered no evidence that the prison's crowded conditions were the result of illegitimate purposes (such as punishment). Presumably, the prison's overcrowded conditions resulted from similar circumstances that caused overcrowding in Hubbard, where the Third Circuit held that no constitutional deprivation had

---

[6] Even were the Court to apply the Eighth Amendment's protections, summary judgment would still be appropriate. The Third Circuit has explained, "[A] prison conditions claim rises to the level of an Eighth Amendment violation only where the allegedly poor conditions seriously deprived inmates of a basic human need such as food, clothing, shelter, medical care, and safety. Double or triple-bunking of cells, alone, is not per se unconstitutional." North v. White, 152 F. App'x 111, 113 (3d Cir. 2005). Here, as in North, Plaintiff has made no specific showing of "any personal deprivation or harm to him" caused by the prison's overcrowded conditions. Id. "[G]eneral allegations of tension, stress, and fear of increased hostility and injury . . . fail[] to constitute the kind of serious deprivation of basic human needs required to establish an Eighth Amendment violation." Id. (citing Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997)).

been caused by a pretrial detainee's experience of overcrowded conditions. 538 F.3d at 232-36. Accordingly, Plaintiff's overcrowding claim cannot survive summary judgment.[7]

## CONCLUSION AND ORDER

For all of the reasons stated herein,

**IT IS** on this, the **12th** day of **August 2010**, hereby

**ORDERED** that the motion for summary judgment shall be **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court shall **CLOSE** this file.

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

---

[7] Plaintiff also complains that he was housed improperly with post-conviction detainees. First, such complaint does not give rise to a constitutional deprivation here, as Plaintiff's violent history provided ample justification to house him in the most secure facility, even while he awaited trial. See Hubbard, 538 F.3d at 232 (stating the controlling constitutional standard). Second, even if the housing classification had been in error, it is far from clear that this would give rise to a constitutional deprivation in any event. See Moody v. Dagett, 429 U.S. 78, 88 n.9 (1976) (stating that prison classification decisions do not give rise to constitutional claims).